UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| LARRY R. BAILEY,<br><br>　　　　Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>　　　　Defendants. | Civil Action No. 6: 17-090-DCR<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This dispute concerns the defendants' alleged failure to provide picnic tables and a security light at the Marsh Branch Boat Ramp ("Marsh Branch"), a recreation site located in the Daniel Boone National Forest. Larry Bailey, who purchased an annual pass to access Marsh Branch, filed a *pro se* Complaint against the United States, the Secretary of the United States Department of Agriculture, the United States Forest Service Chief, the forest supervisor of the Daniel Boone National Forest, and a district ranger. He seeks an injunction forcing the defendants to repair a light and place picnic tables at the Marsh Branch fee site. [Record No. 1, p. 7]

The parties have filed cross-motions for summary judgment. [Record Nos. 62, 65] Because Marsh Branch is an expanded amenity fee site, the defendants are not required to maintain a light or picnic tables there. Accordingly, the defendants' motion for summary judgment will be granted, and Bailey's cross-motion will be denied.

**I.**

This case has a lengthy history that includes two trips to the United States Court of

Appeals for the Sixth Circuit. However, a brief overview of the relevant facts and procedural posture will suffice for purposes of the parties' dispositive motions.

As explained by the Sixth Circuit:

> Bailey possesses an annual recreation pass for the Daniel Boone National Forest in Kentucky that entitles him to access the Marsh Branch Boat Ramp (Marsh Branch). The security light at Marsh Branch was broken, and despite the many complaints that Bailey made to the Forest Service about the light, it remained broken for over a year. Bailey claimed that the area became dangerous at night without the light—once he was approached in the parking lot by two menacing individuals, and there was an increased risk of injury from falls and wild animals.
>
> Frustrated with the Forest Service's lack of action on his complaints about the broken light, Bailey filed suit pro se in the district court against the Secretary and other federal agents under the [Federal Lands Recreation Enhancement Act]. Bailey claimed that the light fixture was a "security service" under the Act that he was entitled to have because the Secretary charged him an amenity fee to access Marsh Branch. Bailey asked the district court for an injunction requiring the Forest Service to repair the light at Marsh Branch and also to place some picnic tables there. Bailey did not seek any monetary relief, such as a refund of the amenity fee he paid. About two weeks after Bailey filed suit, the Forest Service repaired the light but maintained it had no legal obligation to do so. The Forest Service has not provided picnic tables.

[Record No. 27, p. 2]

This Court granted the defendants' motion to dismiss in July 2017, concluding that Marsh Branch is a highly-developed boat launch and, therefore, the defendants were not required to provide safety features or picnic tables at the site. [Record No. 14] However, the Sixth Circuit reversed and remanded the matter, finding that the type of fee charged for use of Marsh Branch could not be determined based on the Complaint, its attachments, and matters of public record. It further indicated that "the parties should be provided an opportunity to develop evidence about the designation of Marsh Branch." [Record No. 27, p. 4]

The parties agree that the Federal Lands Recreation Enhancement Act ("FREA"), 16 U.S.C. § 6801 *et seq.*, governs the defendants' ability to charge fees and provide amenities at Marsh Branch. Following remand, this Court observed that the FREA does not authorize a private right of action and agency actions pursuant to the FREA are reviewed under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.* This means that judicial review "is limited to the administrative record, which includes materials compiled by the agency at the time its decision was made." [Record No. 36, p. 3] Supplementation of the record is appropriate in limited circumstances, and the parties were advised that they could file motions to supplement under the narrow avenue for doing so under the APA. *See Sierra Club v. Slater*, 120 F.3d 623, 638 (6th Cir. 1997).

Bailey filed numerous motions seeking leave to supplement the record, but he did not show that the agency had deliberately or negligently excluded any documents. Likewise, he did not identify any outside information that constitutes necessary "background information." *See id.* [Record Nos. 37, 51, 54, 69, 72, 76] Accordingly, the Court's review is limited to the administrative record.

**II.**

Summary judgment ordinarily is proper if the movant shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). However, when a court is reviewing final agency action, the rules governing summary judgment do not apply because of the court's limited role in reviewing the administrative record. *See City of Cleveland v. Ohio*, 508 F.3d 827 (6th Cir. 2007). The APA provides that "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be—arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). A court reviewing an agency's action under the APA may not resolve factual questions. Instead, it must determine "whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Kentuckians for the Commonwealth v. US. Army Corps of Engineers*, 963 F. Supp. 2d 670, 678 (W.D. Ky. 2013).

Thus, the party seeking judicial review must point to specific facts or factual failings in the administrative record indicating that the agency's decision is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law. If the plaintiff is unable to do so, the agency decision will stand.

### III.

Individuals generally may enter this country's national forests free of charge. *Scherer v. U.S. Forest Serv.*, 653 F.3d 1241, 1242 (10th Cir. 2011) (citing 16 U.S.C. § 6802(e)(2)). However, the Recreation Enhancement Act allows the Secretary of Agriculture to impose amenity fees at certain sites managed by the Forest Service. 16 U.S.C. § 6802. A "standard amenity recreation" fee may be charged at certain areas that provide significant opportunities for outdoor recreation and contain each of the following amenities: designated developed parking; a permanent toilet facility; a permanent trash receptacle; an interpretive sign, exhibit or kiosk; picnic tables; and security services. § 6802(f). The Secretary may charge an "expanded amenity recreation fee" for enumerated services and facilities, which include "use of highly developed boat launches with specialized facilities or services such as mechanical or hydraulic boat lifts or facilities, multi-lane paved ramps, paved parking, restrooms and other improvements such as boarding floats, loading ramps, or fish cleaning stations. § 6802(g)(2)(B).

The parties' dispute boils down to this: Bailey contends that the defendants collect a *standard amenity fee* for access to Marsh Branch and, therefore, are obligated to provide picnic tables and security services in the form of a light. The defendants maintain that Marsh Branch is an *expanded amenity fee site* and therefore they are not required to provide the amenities listed in § 6802(f). Upon review of the administrative record, it is clear the defendants charge an expanded amenity fee for the use of Marsh Branch and have acted within their discretion in declining to provide the requested amenities.

The Recreational Fee Demonstration program, enacted in 1996, required the Forest Service to select up to 100 sites where it would "charge and collect fees for admission to the area or for the use of outdoor recreation sites, facilities, visitor centers, equipment, and services." Pub. L. 104-134, (1996). In response to concerns that fees were being collected from individuals who simply wished to use undeveloped land, Congress passed the FREA, a regime that provided additional guidance regarding fees for access to federal land and services. *Adams v. U.S. Forest Serv.*, 671 F.3d 1138, 1141 (9th Cir. 2012). The FREA was signed into law on December 8, 2004. Pub. L. 108-447 (2004).

As of June 2005, the Secretary had developed interim guidelines and the Forest Service was working to determine whether its current fee sites complied with the FREA. [Administrative Record, hereafter "AR," at 1-28] Each Field Unit was directed to assess whether it should change its fees, remove sites from the fee program, or retain fee sites that met the requirements of FREA. The record demonstrates that Marsh Branch was already considered a highly-developed boat launch and neither its designation nor the applicable fees were changed in light of FREA. [AR 69-75] Further, the Forest Service's "Recreation Fee Pricing Guidance" indicates that boat ramps or launches are expanded-fee sites by default,

stating that "a boat ramp *could* qualify as a Standard Amenity Fee (SAF) site if all requirements are met . . . and with Regional Office concurrence." [AR 121]

There is no support for Bailey's argument that defendants charged both standard and expanded amenity fees for access to Marsh Branch. While expanded amenity fees may be charged "in addition to a standard amenity fee or by itself," § 6802(g)(2), the Forest Service Handbook states that layered recreation fees for similar uses, activities, or programs should be avoided. [AR 46] Consistent with this guidance, the Handbook provides "[i]f the primary use of an area is an activity that could be subject to . . . an expanded amenity recreation fee, charge that type of fee, rather than a standard amenity recreation fee." [AR 49] Additionally, Bailey received a fifty-percent discount by purchasing a "Golden Age Pass," which is not available for standard fee sites and is only available for certain expanded amenity sites and services, including highly developed boat launches. [AR 23, 151]

It is undisputed that Marsh Branch features a boat ramp, multi-lane paved ramps, paved parking, and boarding floats. [Record No. 12, p. 3] Accordingly, the Secretary has acted reasonably by classifying Marsh Branch as an expanded fee site and charging a corresponding fee. A plain reading of the statutory language indicates that when the expanded amenity recreation fee is charged, on its own, the Secretary is not obligated to provide the standard recreation amenities listed under § 6802(f). In short, there is simply nothing to suggest that defendants are required to install a security light despite their decision to do so voluntarily. While Bailey contends that additional discovery is needed on the issue of the picnic tables, it is equally clear that defendants have no obligation to provide them at Marsh Branch.

**IV.**

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. The defendants' motion for summary judgment [Record No. 62] is **GRANTED**.

2. The plaintiff's motion for summary judgment [Record No. 65] is **DENIED**.

Dated: April 30, 2019.

Signed By:
*Danny C. Reeves*
United States District Judge